# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD EAGER and CAROL EAGER,

Plaintiffs-Appellants,

v

CECILIA PEASLEY, Individually and as Trustee
of the CECILIA L. KAURICH TRUST,

Defendant-Appellee,

and

JEFFREY CAVANAUGH and SANDRA
CAVANAUGH,

Defendants.

FOR PUBLICATION
November 30, 2017
9:05 a.m.

No. 336460
Alcona Circuit Court
LC No. 2014-002282-CH

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

K. F. KELLY, J.

Plaintiffs appeal by right an order denying their request for injunctive relief. Plaintiffs sought to preclude defendant from renting out a lake house for transient short-term use, arguing that such use violated certain restrictive covenants.[1] The trial court found that the restrictive covenant was ambiguous and that, as a result, the law required free use of the property including transient short-term rentals. Finding no such ambiguity, we reverse.[2]

## I. BASIC FACTS

---

[1] Defendants Jeffrey and Sandra Cavanaugh reached a settlement agreement with plaintiffs early on in the litigation. This appeal solely concerns defendant Peasley's lake house, which she owns, not as a resident, but rather in her capacity as a trustee, and we shall refer to her hereafter as "defendant" for purposes of this opinion.

[2] We have not been asked to address - nor do we comment on - long-term rentals of private dwellings for residential use and whether such use is commercial in nature. The scope of this opinion addresses only short-term transient rentals.

-1-

Plaintiffs filed an amended complaint for breach of the restrictive covenants and nuisance against defendant, their neighboring property owner, who rented out a lake house for transient short-term use. Plaintiffs alleged that the rentals violated the restrictive deed covenants limiting defendant's use of the premises to "private occupancy" and prohibiting "commercial use" of the premises. Plaintiffs sought injunctive relief in the form of an order enjoining any further rental activity and abating the purported nuisance. No trial was conducted, nor does it appear that any hearing took place. Instead, the parties submitted the following stipulated facts to the trial court for resolution:

6. Plaintiff are owners of real property located in Caledonia Township, Alcona County, Michigan described as follows:

"Lot 4 of Doctor's Point, a subdivision recorded in Liber 1 of Plats, Page 47, Alcona County Records, commonly known as 6351 Oak Street, Hubbard Lake, Michigan 49747 . . ."

7. Defendant, as Trustee of the Cecilia L. Kaurich Trust, is the owner of real property located in Caledonia Township, Alcona County, Michigan as follows::

"Lot 1 and part of Lot 2 of Doctor's Point, a subdivision recorded in Liber 1 of Plats, Page 47, Alcona County Records, commonly known as 653 Oak Street, Hubbard Lake, Michigan 49747 . . ."

8. The subject cottage is a two-story structure with 150 feet of frontage on Hubbard Lake. It is approximately 2000 square feet in size and contains four bedrooms.

9. Defendant Peasley has owned the cottage since 2009 and Defendant has been renting it during the summer season each year since then.

10. Defendant advertises its rental availability on-line through a national website, www.homeaway.com, which also serves as the medium for payment.

11. All rental agreements are between Defendant Peasley and a single responsible signatory.

12. The renter must be at least 26 years old, and the rental is limited to 10 guests with no pets allowed.

13. The year 2016, which is typical of the rental history, shows 64 days booked over the four-month period of May through August. No dates have yet been booked in September.

14. Defendants have rented and continue to rent the Peasley Property on a short-term basis, for a minimum of two (2) nights to seven (7) nights for each rental, with prices ranging from $150.00 - $225.00 per night to $850.00 -

$1,700.00 per week depending upon the season, Spring May 19 – May 21, 2016; Summer May 22nd – September 2016.

15.     The Defendant's calendar for 2016 reflects rentals for 10 different families and one business group (Leadership Retreat). The rentals average six (6) days in length.

16.     There is no rental or business office maintained on site, no bed and breakfast service, and no other services provided while renters [are] on site[,] such as housekeeping or linen.

17.     Title to the Eager Property and Peasley Property originated from a common Grantor who burdened Lots 1-9 of Doctor's Point Subdivision with the same restrictive covenants which are the subject of this proceeding.

18.     Among the covenants and restrictions placed under the chain of title of each of these parties' by warranty deed dated February 26, 1946, recorded March 18, 1946 at Liber 78, Page 432, Alcona County Records are the following:

> " . . . the premises shall be used for private occupancy only; . . .that no commodity shall be sold or offered for the sale upon the premises and no commercial use made thereof, . . ."

In pertinent part, the restrictive covenant provided:

> [T]hat the premises shall be used for private occupancy only; that no building to be erected on said lands shall be used for purposes otherwise than as a private dwelling and such buildings as garage, ice-house, or other structures usually appurtenant to summer resort dwellings are to be at the rear of said dwellings; that such dwellings shall face the lake unless otherwise specified; that no commodity shall be sold or offered for sale upon said premises and no commercial use made thereof . . . .

The court recited the stipulated facts and acknowledged the parties' arguments but then inexplicably denied plaintiffs' request for injunctive relief.

## II. ANALYSIS

"The interpretation of restrictive covenants is a question of law that this Court reviews de novo." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 389; 761 NW2d 353 (2008), citing *Terrien v Zwit*, 467 Mich 56, 60–61, 648 NW2d 602 (2002).

Our Supreme Court has confirmed that restrictive covenants are contracts with a particular value:

> Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property. Such deed restrictions generally constitute

-3-

a property right of distinct worth. Deed restrictions preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment. If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land. Such contracts allow the parties to preserve desired aesthetic or other characteristics in a neighborhood, which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties. [*Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007) (citations and quotation marks omitted).]

In terms of restrictive covenants, our Supreme Court has recognized "two essential principles, which at times can appear inconsistent. The first is that owners of land have broad freedom to make legal use of their property. The second is that courts must normally enforce unwaived restrictions on which the owners of other similarly burdened property have relied." *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 343; 591 NW2d 216 (1999). These types of cases are, therefore, decided on a case-by-case basis. *Id.*

"In construing restrictive covenants, the overriding goal is to ascertain the intent of the parties. Where the restrictions are unambiguous, they must be enforced as written." *Johnson*, 281 Mich App at 389 (citations omitted). "[T]he language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon." *Borowski v Welch*, 117 Mich App 712, 716–717; 324 NW2d 144 (1982). Our Supreme Court has cautioned against judicial over-stepping when interpreting restrictive covenants:

> The dissent justifies its amending from the bench by asserting that "[t]he absence of a definition in the restrictive covenants" of the terms "commercial, industrial, or business enterprises" leaves these terms ambiguous, and thus "opens the terms to judicial interpretation." We find this to be a remarkable proposition of law, namely, that the lack of an explicit internal definition of a term somehow equates to ambiguity—an ambiguity that apparently, in this case, allows a court free rein to conclude that a contract means whatever the court wants it to mean. Under the dissent's approach, any word that is not specifically defined within a contract becomes magically ambiguous. If that were the test for determining whether a term is ambiguous, then virtually all contracts would be rife with ambiguity and, therefore, subject to what the dissent in "words mean whatever I say they mean" fashion describes as "judicial interpretation." However, fortunately for the ability of millions of Michigan citizens to structure their own personal and business affairs, this is not the test. As this Court has repeatedly stated, the fact that a contract does not define a relevant term does not render the contract ambiguous. Rather, if a term is not defined in a contract, we will interpret such term in accordance with its "commonly used meaning." [*Terrien*, 467 Mich at 75–76 (citations and footnotes omitted).]

The terms "private occupancy only" and "a private dwelling," coupled with the prohibition against "commercial use" in the restrictive covenant are clear and unambiguous and defendant is prohibited from renting the property on a transient short-term basis.

## A. THE TERMS "PRIVATE OCCUPANCY ONLY" AND "A PRIVATE DWELLING"

In *Phillips v Lawler*, 259 Mich 567, 571; 244 NW 165 (1932), the building restriction at issue provided that " '[n]o building or structure shall be used, built or maintained thereon for any purposes except for a private residence and a private garage either in connection with the residence or built separately thereon.' " *Id*. at 570. Our Supreme Court concluded that a city's zoning ordinance could not impair the right of the parties to enter into such a contract. The Court concluded that: "In building restriction cases involving covenants, *the term 'private dwelling house' means a building designed as a single dwelling to be used by one family.*" *Id*. at 571 (emphasis added), citing *Schadt v Brill*, 173 Mich 647; 139 NW 878 (1913); *Kingston v Busch*, 176 Mich 566; 142 NW 754 (1913); *De Galan v Barak*, 223 Mich 378; 193 NW 812 (1923); and *Seeley v Phi Sigma Delta House Corp*, 245 Mich 252, 254; 222 NW 180 (1928).

In *Seeley*, our Supreme Court concluded that a building restriction permitting " 'one single private dwelling house' " prohibited erecting a building for use as a college fraternity: "We hold that a restrictive covenant running with land, limiting use thereof to 'one single private dwelling house,' means one house, for a single family, living in a private state, and prohibits a college fraternity, or chapter house, intended to provide board and rooms for part of the members and a gathering place for fraternity purposes for all members." *Seeley*, 245 Mich at 256. The Court first noted that "[t]he language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon." *Id*. at 253. The Court's focus was on the purpose of the language: "The term as a connected whole was employed for a purpose, and if such purpose is manifest, and the words to accomplish it apt, we need only make application thereof to the facts established by the evidence." *Id*. In *Seeley*, "the restriction was imposed by an owner when he sold lots in a residential district, and the purpose was to preserve such character with its assurance of privacy and quiet enjoyment for the reciprocal benefit of all purchasers of lots." *Id*. Therefore, although the term "dwelling house" was capable for multiple meanings, it assumed "concrete meaning" when accorded with the purpose behind the restriction. The *Seeley* Court confirmed that "[i]n building restriction cases, involving covenants, the term 'private dwelling house' means a building designed as a single dwelling to be used by one family." *Id*. at 254. A college fraternity whose "relation is purely artificial, is a business proposition, and more nearly approximates the character of a club, boarding house, or apartment house, with added recreational privileges," was not a family. *Id*. at 255.

Here, the covenant provides that "that the premises shall be used for private occupancy only; that no building to be erected on said lands shall be used for purposes otherwise than as a private dwelling . . ." *Phillips* and *Seeley* confirm that transient use of the property as a short-term rental violates the covenant. There is no reason to treat "private occupancy" in this case any differently than "private residence" in *Phillips* or "single private dwelling house" in *Seeley*.

In *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 336; 591 NW2d 216 (1999), the use and character restrictions provided: "No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than for the purpose of one single dwelling not to exceed two stories in height." *Id*. at 337. The *O'Connor* Court concluded that interval use – or timesharing – violated this restriction. It reviewed *Wood v Blancke*, 304 Mich 283; 8 NW2d 67 (1943), which involved a dispute over language that restricted use to "residence purposes only" and whether such language prevented an owner from raising racing pigeons on the property. *O'Connor*, 459 Mich at 341. The *O'Connor* Court reiterated that the term "residence" involved an inquiry beyond what structures were permitted on the property:

> Restrictive covenants in deeds are construed strictly against grantors and those claiming the right to enforce them, and all doubts are resolved in favor of the free use of property. Notwithstanding this rule of construction, covenants restricting the erection of any building except for dwelling house purposes have been held to apply to the use as well as to the character of the building; and in strictly residential neighborhoods, where there has always been compliance with the restrictive covenants in the deeds, nullification of the restrictions has been deemed a great injustice to the owners of property. It is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings.
>
> > "Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy. The courts have long and vigorously enforced them by specific mandate. This court has expressly recognized that the right of privacy for homes is a valuable right."

[*O'Connor*, 459 Mich at 341–342, quoting *Wood* 304 Mich at 287–288 (citations omitted).]

The *O'Connor* Court recognized that the issue of whether interval ownership violated the restrictive covenant was one of first impression and turned its attention to *Wood's* imperative "that the usual, ordinary and incidental use of property as a place of abode does not violate the covenant restricting such use to 'residential purposes only,' but that an unusual and extraordinary use may constitute a violation . . .". *O'Connor*, 459 Mich 344-345, quoting *Wood*, 304 Mich at 288-289. The Court then turned to the term "residential purpose":

[A] residence most narrowly defined can be a place which would be one place where a person lives as their permanent home, and by that standard people could have only one residence, or the summer cottage could not be a residence, the summer home at Shanty Creek could not be a residence if the principal residence, the place where they permanently reside, their domicile is in some other location, but I think residential purposes for these uses is a little broader than that. It is a place where someone lives, and has a permanent presence, if you will, as a resident, whether they are physically there or not. Their belongings are there.

-6-

They store their golf clubs, their ski equipment, the old radio, whatever they want. It is another residence for them, and it has a permanence to it, and a continuity of presence, if you will, that makes it a residence. [*O'Connor*, 459 Mich at 345.]

However, interval or timesharing use did not constitute residential use:

The people who occupy it, or who have these weekly interests in this property, they have the right to occupy it for one week each year, but they don't have any rights, any occupancy right, other than that one week. They don't have the right to come whenever they want to, for example, or to leave belongings there because the next resident, who is a one-fiftieth or one forty-eighth co-owner has a right to occupy the place, too, and the weekly owner has no right to be at the residence at any time other than during their one week that they have purchased. That is not a residence. That is too temporary. There is no permanence to the presence, either psychologically or physically at that location, and so I deem that the division of the home into one-week timeshare intervals as not being for residential purposes as that term is used in these building and use restrictions. [*Id*. at 346.]

The defendants argued that the plaintiffs had waived the use restriction because they had allowed short-term rentals. The *O'Connor* Court disagreed:

With regard to whether plaintiffs waived the use restriction by allowing short-term rentals, we agree with the circuit court that such an alternative use is different in character and does not amount to a waiver of enforcement against interval ownership. Further, defendants have not demonstrated that the occasional rentals have altered the character of the Valley View subdivision to an extent that would defeat the original purpose of the restrictions. [*O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 346; 591 NW2d 216, 221 (1999).]

Defendant argues that *O'Connor* "cautions against rigid definitions when interpreting covenants," but, like the Court in *Torch Lake Protection Alliance v Ackermann*, unpublished opinion per curiam of the Court of Appeals, issued November 30, 2004 (Docket No. 246879), we conclude that defendant's attempt to distinguish the short-term rentals from the interval ownership activity in *O'Connor* is unavailing because the case before us does not present a question of waiver. *Id.* at unpub op, p 5.[3]

In *Torch Lake*, the trial court concluded that rental use of property violated deed restrictions providing that the property "shall be used for private residence purposes only" and not used for any commercial purpose. *Id*. at unpub op, pp 1-2. The Court found these terms to be unambiguous:

---

[3] "Although unpublished opinions of this Court are not binding precedent, they may, however, be considered instructive or persuasive." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145; 783 NW2d 133 (2010) (internal citations omitted).

The trial court found, and we agree, that the residential use and business prohibition covenants in defendants' deed are not ambiguous, and no genuine issue of material fact was shown with respect to defendants' violation of those covenants. The trial court's reasoning is clear and cogent:

> Mr. Crumb when he laid out these parcels and put these covenants in place, . . .he did attempt to make as clear as this Court believes any human can, is that the property was to have a private residential purpose; it may be that subsumed within the notion of private residential purpose would be the occasional use of one's property by another, it's certainly not uncommon people swap their homes with friends, they have friends come and visit, they have overnight guests, guests for retractive [sic] periods of time, often people take care of aging parents, family members need to be nursed during a period of illness; I suspect in the vast majority of those occasions no money ever changes hands . . .[B]ut perhaps the best writer to ever serve on the Michigan Supreme Court was Justice Volker . . .Justice Volker wrote about the inherent ambiguity of language and the ability of lawyers to make almost any argument about any set of words that man could be constrained to put together; . . . I think the point is often the more detail one provides it simply provides more opportunity to try to insert ambiguity where none was intended.

> If there was one core facet associated with these deed restrictions, it is that they restrict property to a private residential purpose. Has that purpose outlived its meaning? Is this an isolated pocket of residential property surrounded by encroaching motels or businesses? . . .This is extraordinary property, it is a precious resource and it is largely residential. There are some commercial establishments, marines, [sic] restaurants, motels, on various parts of the lake, but the property at issue here is private residential property, and it is not surrounded by or being encroached upon by motels or hotels or gas stations. The character of the neighborhood is not changed. The covenants have not outgrown their purpose, which is to preserve a private residential purpose.

> But, to the extent we have clear precedent in *O'Connor v Resort Owners* with regard to what is a residence and what is not, there is no question that rentals are in excess of $50,000 during the height of the season. [*Torch Lake*, unpub op, pp 3-4.]

Citing *Wood*, the Court acknowledged that "incidental uses to a prescribed residential use may not violate the covenant if it is casual, infrequent, or unobstructive, and causes neither appreciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents." *Id*., unpub op, p 4. The Court then considered the *O'Connor* Court's consideration of what constituted a "residential purpose." *Id.* Because the defendants failed to present admissible evidence to support their claim that their rental use did not exceed an incidental use of property for "private residence purposes only," the trial court properly concluded that the use violated the deed restrictions.

-8-

The *Torch Lake* case is on point with the case at bar and we adopt the Court's analysis as our own. We reject defendant's tortured attempt at reading an ambiguity into the restrictive covenant that simply does not exist. Defendant's transient short-term rental usage violates the restrictive covenant requiring "private occupancy only" and "private dwelling." Defendant, who lives in a neighboring county, does not reside at the property. She rents the property to a variety of groups, including tourists, hunters, and business groups. Those using the property for transient short-term rental have no right to leave their belongings on the property. Rentals are available throughout the year and are advertised on at least one world-wide rental website. This use is not limited to one single family for "private occupancy only" and a "private dwelling," but is far more expansive and clearly violates the deed restrictions.

## B. THE TERM "COMMERCIAL USE"

In denying plaintiffs' request for injunctive relief, the trial court focused primarily on the term "private dwelling" and spent little time discussing whether defendant's actions amounted to "commercial use" of the property. We conclude that, even if the short-term rentals did not specifically violate the deed restrictions limiting the property to "private occupancy only" and "private dwelling," the rentals most assuredly violated the restrictive covenant barring "commercial use" of the property.

In *Terrien*, our Supreme Court noted:

> The operation of a "family day care home" for profit is a commercial or business use of one's property. We find this to be in accord with both the common and the legal meanings of the terms "commercial" and "business." "Commercial" is commonly defined as "able or likely to yield a profit." *Random House Webster's College Dictionary* (1991). "Commercial use" is defined in legal parlance as "use in connection with or for furtherance of a profit-making enterprise." Black's Law Dictionary (6th ed). "Commercial activity" is defined in legal parlance as "any type of business or activity which is carried on for a profit." *Id*. [*Terrien*, 467 Mich at 63–64.]

We conclude that, under the definitions set forth in *Terrien*, the act of renting property to a third-party for short-term use is a commercial use, even if the activity is residential in nature.

We specifically adopt this Court's reasoning in *Enchanted Forest Property Owners Ass'n v Schilling*, unpublished opinion per curiam of the Court of Appeals, issued march 22, 2010 (Docket No. 287614). The defendants in *Enchanted Forest* "occasionally rented out their property, typically for periods of one week or less, for a rental fee." *Id*. at unpub op, p 2. The rentals were not as frequent as the case at bar with records revealing "that the property was rented for 33 days in 2005, 29 days in 2006, 34 days in 2007, and 31 days between January 1 and March 31, 2008." *Id*. This Court concluded that such short-term rentals violated the restrictive covenants prohibiting commercial use of the property:

> There is no dispute that defendants contracted with an agency to advertise their property as a vacation rental and did, in fact, rent the property for a fee. Although the financial documentation submitted by defendants shows that defendants did

not make a profit when renting their property, this is not dispositive of whether the commercial purpose prohibition was violated. Defendants clearly indicated that they rented out the property to transient guests. Use of the property to provide temporary housing to transient guests is a commercial purpose, as that term is commonly understood. The trial court properly granted summary disposition in favor of the EFPOA on the basis of Article XI of the deed restrictions. [*Id.* at unpub op, p 7.]

"Commercial use," which is clearly prohibited in the restrictive covenant, includes short-term rentals even without resorting to technical refinement of what constitutes "private occupancy" or "private dwelling." That defendant and her renters may use the property as a private dwelling is not dispositive. Short-term rentals still violate the restrictive covenant barring commercial use of the property. Where defendant's commercial use of the home was in clear violation of the unambiguous restrictive covenant, the trial court should have granted plaintiffs' request for injunctive relief.

Reversed and remanded for the trial court to enter a judgment granting plaintiffs' request for injunctive relief. We do not retain jurisdiction. Plaintiffs may tax costs as the prevailing party. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Peter D. O'Connell