*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

APACHE HILLS PROPERTY OWNERS
ASSOCIATION, INC,

UNPUBLISHED
December 22, 2022

Plaintiff-Appellant,

v

No. 360554
Oceana Circuit Court
LC No. 2021-014799-CH

SEARS NICHOLS COTTAGES, LLC,

Defendant-Appellee.

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's opinion and order denying its motion for summary disposition under MCR 2.116(I)(2) and granting summary disposition in favor of defendant under MCR 2.116(C)(10). Additionally, plaintiff challenges the trial court's order awarding attorney fees and costs to defendant. We reverse and remand for entry of an order granting summary disposition in favor of plaintiff.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a dispute regarding the application of restrictive covenants to a short-term rental property. Plaintiff, a nonprofit corporation, enacted restrictive covenants to govern the lot owners of Apache Hills, a subdivision. It asserted that the covenants provided that each lot in the subdivision shall be used only as a single-family private residence, and no business of any sort, other than a home office, shall be conducted from or on any lot. Furthermore, the covenants restricted any activity that could become a nuisance on the premises. Plaintiff was authorized to prosecute any violation of the covenants and pursue remedies and damages. In April 2021, defendant purchased lot 106 of the subdivision encompassing a home located at 5526 W. Longbridge Road, Pentwater, Michigan. It was undisputed that defendant named the home "Hazelnut Haus" and advertised it as a short-term rental property on its corporate website.

After receiving information that three lot owners, including defendant, were using their properties contrary to the conditions set forth in the restrictive covenants, plaintiff, through counsel, sent cease-and-desist letters to stop the violations. However, defendant continued to

advertise and lease its property for short-term rental. Because plaintiff concluded that defendant used its lot and the home thereon for business purposes, specifically as a rental property, plaintiff filed this suit raising claims for: (1) "breach of covenant/injunctive relief short-term rentals;" and (2) "declaratory relief regarding defendant's use of the lot."

Addressing count I of the complaint, plaintiff asserted defendant advertised various rental properties on its website, "www.sncottages.com." On the website, defendant advertised lot 106 or Hazelnut Haus for rent of three-night minimum stays with a maximum occupancy of 16 persons[1] and five vehicles parked on site. It was alleged that defendant's representative or a manager did not reside at the home on the lot or claim the principal residence exemption. The lot was secured by a commercial mortgage that entitled the lender to collect all rents, income, royalties, and profits. Thus, plaintiff contended that the lot was used for business or commercial purposes, not as a single-family private residence, and therefore, was in violation of the restrictive covenants. Despite plaintiff's request that defendant cease its commercial use of the lot with short-term rentals, defendant refused and continued to list the lot as available for rent. Consequently, plaintiff requested injunctive relief as well as declaratory relief to resolve the parties' dispute over the lot's use.

In August 2021, defendant filed a counterclaim. Defendant alleged that it reviewed the covenants before the lot purchase and determined that the covenants allowed it to lease the property, without restrictions, to a third-party. Consequently, defendant raised one-count entitled "declaratory relief/judgment pursuant to MCR 2.605" and sought a declaration that the lease of the property did not constitute a commercial purpose or that leasing the property was exempt from the prohibition of commercial purposes. Furthermore, if plaintiff amended the covenants to restrict the right to lease, defendant contended its use should be "grandfathered" and remain unrestricted. Defendant requested a declaration that it had the right to lease its property without restriction and an award of costs and attorney fees to defend the complaint and pursue the counterclaim. In September 2021, defendant amended the counterclaim, alleging that the restrictive covenants allowed it to recover reasonable attorney fees and expenses because it was required to file suit to enforce the covenants.

In December 2021, defendant moved for summary disposition under MCR 2.116(C)(8) and (10). Defendant alleged that it purchased the lot containing the home at 5526 W. Longbridge Road, Pentwater on April 20, 2021, and acknowledged that the property was governed by amended and restated covenants. When it purchased the home, defendant concluded that the covenants allowed it to lease the home to third parties as stated in section 6(B). Defendant claimed that Pentwater was a beach town and tourist community in the summer. It further submitted that other homes within the subdivision engaged in short-term leasing even before defendant's purchase. The subdivision's board of directors allegedly discussed the issue of short-term leasing prior to defendant's purchase, contemplated amending the covenants to prohibit short-term rentals, and ultimately chose not to amend the covenants. However, after defendant's purchase, plaintiff filed suit to prevent defendant from engaging in short-term leasing of the home on the subdivision lot.

---

[1] Other documentation indicated that defendant reduced the maximum number of occupants and altered the pet policy. These changes are not pertinent to the disposition of the appeal.

Defendant contended that the covenants constituted a contract written in unambiguous terms, and therefore, must be enforced as written. It asserted that the covenants allowed defendant to lease the home to third parties, and there was no restriction on the time-period or duration of any lease. Accordingly, it sought to have the restrictive covenant strictly construed against the party seeking enforcement, namely plaintiff, and any doubt involving the covenant resolved to permit the free use of property. In order to prevent the short-term leases entered into by defendant, plaintiff allegedly sought to impose language not contained with the covenants. Rather, the owners in the subdivision were entitled to lease their property without restrictions and were authorized to build additional living quarters above a garage if the use was temporary or seasonal. Defendant requested summary disposition in its favor claiming its short-term lease of the home on the lot did not constitute a commercial use prohibited by the covenants. And, the leasing of the property did not change the character of the home as residential, single-family. Finally, defendant claimed the lease of the home did not constitute a nuisance because the covenants permit leasing, and a contrary interpretation would render the leasing provision nugatory. Applying the plain language of the covenants, defendant could not operate a beauty salon from the home but was entitled to lease the home on a short-term basis. Defendant requested an award of costs and attorney fees and a determination that plaintiff's complaint was frivolous.

In January 2022, plaintiff filed its response in opposition to defendant's motion for summary disposition and requested for summary disposition in its favor under MCR 2.116(I)(2). Plaintiff alleged that defendant was a business entity, engaged in short-term rentals of its lot located within the subdivision, short-term rentals were inconsistent with the property's use as a single-family private residence, the lease of the property constituted a business use, and this use was in violation of the restrictive covenants pertaining to the lot. Thus, defendant's rental of the property within the subdivision was constrained by the single-family private residence provision and business prohibition restrictions. Plaintiff countered that defendant focused on one provision within the recorded restrictive covenants but an examination of the covenants as a whole and interpreted for the benefit of all lot owners demonstrated that defendant's use was not permitted. Defendant's admission to engaging in short-term rentals of the property violated plaintiff's restrictive covenants because those rentals were inconsistent with the use of the property as a single-family private residence and constituted a business use. This business use was demonstrated by defendant's purchase of the property through a commercial mortgage. Leases that were inconsistent with use as a single-family private residence were prohibited; permanent occupancy, not a transitory use, was intended.

Plaintiff alleged that, although defendant seemingly claimed that waiver of the covenant occurred because the area was a beach community visited by tourists, the nature of the area could not circumvent the restrictions created by the subdivision through the covenants. And plaintiff denied that defendant was entitled to costs and attorney fees because a counterclaim was not necessary to enforce the covenants. If plaintiff's position was unsuccessful, defendant would continue its rentals. Additionally, the litigation was not frivolous but necessary to enforce the covenants. Accordingly, plaintiff submitted that defendant's motion for summary disposition should be denied, and rather, it was entitled to summary disposition under MCR 2.116(I)(2).

In February 2022, the trial court heard oral argument on the summary disposition motions. Shortly thereafter, the trial court entered its opinion and order granting summary disposition in favor of defendant under MCR 2.116(C)(10) and denying summary disposition in favor of

plaintiff. In its opinion, the trial court declined to find that plaintiff's complaint was frivolous but determined that defendant was entitled to attorney fees as provided for in the covenants to the prevailing party.[2] From these rulings, plaintiff appeals.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Summary disposition is appropriate when the opposing party failed to state a claim on which relief can be granted, MCR 2.116(C)(8). *In re Lett Estate*, 314 Mich App 587, 595; 887 NW2d 807 (2016). Under MCR 2.116(C)(8), the legal sufficiency of the claim is examined by the pleadings alone with the factual allegations accepted as true and viewed in a light most favorable to the nonmoving party. *Id*.

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021). If it appears that summary disposition is proper in favor of the opposing party, instead of the moving party, summary disposition may be granted under MCR 2.116(I)(2). *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 586; 977 NW2d 128 (2021).

## III. ANALYSIS

Plaintiff alleges that the trial court erred in granting summary disposition in favor of defendant because the restrictive covenants, when read as a whole, require that leasing or renting comply with the single-family private residence and business restrictions and defendant's short-term rentals violate those provisions. We agree.

## A. THE COVENANTS

In the present case, the parties do not dispute that plaintiff is governed by amended and restated covenants with an effective date of January 1, 2009. The covenants commenced by noting that plaintiff previously imposed "restrictive covenants for the purpose of limiting the use thereof

---

[2] In March 2022, defendant filed a limited motion for reconsideration to protest the trial court's failure to find that plaintiff's complaint was frivolous. In April 2022, the trial court granted defendant's motion for reconsideration and found the complaint was frivolous "because the covenants specifically allow for renting without any restrictions as to the duration." The trial court concluded that defendant was entitled to costs and attorney fees "jointly and severally against Plaintiff and Plaintiff's counsel." Plaintiff filed a claim of appeal from this ruling, but it was dismissed for lack of jurisdiction. *Apache Hills Prop Owners Ass'n, Inc v Sears Nichols Cottages, Inc*, unpublished order of the Court of Appeals, entered May 3, 2022 (Docket No. 361026).

to desirable residential, recreational and other purposes[.]" The new amendments were the result of a vote of 77 of 141 lot owners. The new amendments gave the corporation, through the board of directors, "the authority to interpret and enforce these covenants for the benefit of all the lots within the Premises." The covenants contain the following provision governing use:

6. <u>USE</u>.

A.      Each lot in the Premises shall be used only for a single family private residence. Only one structure may be used as a dwelling on any such lot, except that additional living quarters, to be occupied only temporarily or seasonally, may be constructed over a garage.

\*   \*   \*

No business of any sort, other than home office activities, shall be conducted from or on any lot within the Premises, and no signage advertising any such business shall be placed on a lot.

B.      A lot owner may lease his/her property to a third party, but he/she has full liability for any breach by the tenant of these covenants.

C.      No nuisance shall be conducted on any lot within the Premises, nor shall anything be done on said Premises which is or may become a nuisance.

The covenants also provided that no alteration to the size, design, color, or location of a structure or modification of an existing structure may occur without approval of the corporate building committee. Additionally, no auxiliary structures or fence may be constructed without prior approval. The lot owner was entitled to appeal any adverse building committee decision, and the board had discretion to "waive or recognize case-by-case exceptions to any requirement under these covenants." The covenants provided that each lot owner was "bound by the obligations set forth in these covenants" and in the corporate bylaws. If the corporation or lot owner found it necessary to file suit to enforce any covenant, the court "shall award the prevailing party its/his/her reasonable attorney's fees and expenses of litigation."

## B. OVERVIEW OF COVENANT LAW

The trial court's interpretation of restrictive covenants presents a question of law that this Court reviews de novo. *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015). The interpretation of a contractual agreement also presents a question of law subject to de novo review. *Id.* Restrictive covenant cases are examined on a case-by-case basis. *O'Connor v Resort Custom Builders*, 459 Mich 335, 345; 591 NW2d 216 (1999); *Eager v Peasley*, 322 Mich App 174, 180; 911 NW2d 470 (2017). Contracts must be read as a whole. Courts must give effect to every word, clause, and phrase, and avoid a construction that would render any part of the contract surplusage or nugatory. *Magley v M & W Inc*, 325 Mich App 307, 317-318; 926 NW2d 1 (2018).

Operating agreements, such as a corporation's bylaws, are intended to govern the future conduct of the entity and its members. Generally, an entity's bylaws or membership agreement may provide for the regulation and management of its

affairs as long as the provision is not inconsistent with law or the articles authorizing the entity. When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members. In this case, the parties do not dispute that the Association had the authority to adopt bylaws and that the bylaws were adopted by a majority of the Association's members. Thus, to the extent that they do not conflict with the Association's articles of incorporation or this state's law, the bylaws would constitute a binding contractual agreement between the Association and its various members. [*Conlin*, 313 Mich App at 254-255 (citations omitted).]

Our Supreme Court recognized that restrictive covenants or deed restrictions are valuable because they preserve characteristics desired by those seeking a familial environment:

Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property. Such deed restrictions generally constitute a property right of distinct worth. Deed restrictions preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment. If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land. Such contracts allow the parties to preserve desired aesthetic or other characteristics in a neighborhood, which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties. [*Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007) (citations, quotation marks, and brackets omitted).]

In *Eager*, this Court set forth the following principles to interpret restrictive covenants:

In construing restrictive covenants, the overriding goal is to ascertain the intent of the parties. Where the restrictions are unambiguous, they must be enforced as written. The language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon. [*Eager*, 322 Mich App at 180-181 (citations, quotation marks, and brackets omitted).]

In *O'Connor*, 459 Mich at 337-338, the defendant developer constructed a home located in the Valley View subdivision of Shanty Creek. After it was unable to sell the home, it marketed shares of "interval ownership;" this meant a purchaser bought occupancy rights in one or two week-long intervals. An interval owner could submit their occupancy rights to a commercial pool and trade with individuals who had occupancy rights in homes at other resorts. Interval ownership was not expressly permitted by the governing documents. However, Shanty Creek did facilitate daily and weekly rentals of Valley View homes. The plaintiff property owners sued to enjoin the defendant from selling interval ownership interests. *Id*. at 338-339.

The trial court held that the restriction governing the development in the Valley View subdivision did not permit interval ownership. The trial court determined that short-term rentals were different in character than interval ownership and did not result in a waiver of the right to prohibit the latter. In the context of single, as opposed to interval, ownership, the single owner was known to neighbors and could be contacted if a renter caused a problem. The Court of Appeals reversed, concluding that the law favored the free use of property and interval ownership was not incompatible with "residential purposes." *Id*. at 339-340. Our Supreme Court reversed this Court and reinstated the trial court's decision, stating:

> [W]e return to the trial court's analysis. We conclude that its reasoning is sound, and adopt it as our own:
>
>> What's a residential purpose is the question. Well, a residence most narrowly defined can be a place which would be one place where a person lives as their permanent home, and by that standard people could have only one residence, or the summer cottage could not be a residence, the summer home at Shanty Creek could not be a residence if the principal residence, the place where they permanently reside, their domicile is in some other location, but I think residential purposes for these uses is a little broader than that. It is a place where someone lives, and has a permanent presence, if you will, as a resident, whether they are physically there or not. Their belongings are there. They store their golf clubs, their ski equipment, the old radio, whatever they want. It is another residence for them, and it has a permanence to it, and a continuity of presence, if you will, that makes it a residence.
>
> The trial court then correctly determined that interval ownership did not constitute a residential purpose under the circumstances of this case:
>
>> I don't think that's true of weekly—of timeshare units on a weekly basis of the kind, at least, of the kind being discussed here, which includes trading, and is a traditional—usually associated with condominiums, but in this case happens to be instead of an apartment happens to be a building that is a single family building other than this arrangement for its joint ownership by, at least, up to forty-eight people in this case. The people who occupy it, or who have these weekly interests in this property, they have the right to occupy it for one week each year, but they don't have any rights, any occupancy right, other than that one week. They don't have the right to come whenever they want to, for example, or to leave belongings there because the next resident, who is a one-fiftieth or one forty-eighth co-owner has a right occupy the place, too, and the weekly owner has no right to be at the residence at anytime other than during their one week that they have purchased. That is not a residence. That is too temporary. There is no permanence to the presence, either psychologically or physically at that location, and

so I deem that the division of the home into one-week timeshare intervals as not being for residential purposes as that term is used in these building and use restrictions . . . .

With regard to whether [the] plaintiffs waived the use restriction by allowing short-term rentals, we agree with the circuit court that such an alternative use is different in character and does not amount to a waiver of enforcement against interval ownership. Further, [the] defendants have not demonstrated that the occasional rentals have altered the character of the Valley View subdivision to an extent that would defeat the original purpose of the restrictions. [*Id*. at 345-346.]

In *Eager*, the plaintiffs filed suit to preclude the defendant, a neighboring property owner, from renting out a lake house for transient short-term use, alleging that such use violated a restrictive covenant and constituted a nuisance. The plaintiffs relied on the deed restrictions that limited the defendant's use of the property to "private occupancy" and prohibited "commercial use" of the premises. The defendant advertised the property for rent on a national website, the renter had to be at least 26 years old, and the rental was limited to 10 guests. There was no rental or business office at the home, and no housekeeping or food services were offered. *Eager*, 322 Mich App at 177-179. The trial court found that the restrictive covenant was ambiguous, consequently, free use of the property, including transient, short-term rentals, were permissible. *Id*. at 176.

The *Eager* Court noted that the restrictive covenant at issue provided, in part:

that the premises shall be used for private occupancy only; that no building to be erected on said lands shall be used for purposes otherwise than as a private dwelling and such buildings as garage, ice-house, or other structures usually appurtenant to summer resort dwellings are to be at the rear of said dwellings; that such dwelling shall face the lake unless otherwise specified; that no commodities shall be sold or offered for sale upon said premises and no commercial use made thereof . . . . [*Id*. at 179.]

This Court discussed the law governing restrictive covenants and then concluded:

We reject [the] defendant's tortured attempt at reading an ambiguity into the restrictive covenant that simply does not exist. [The d]efendant's transient, short-term rental usage violates the restrictive covenant requiring "private occupancy only" and "private dwelling." [The d]efendant, who lives in a neighboring county, does not reside at the property. She rents the property to a variety of groups, including tourists, hunters, and business groups. Those using the property for transient, short-term rental have no right to leave their belongings on the property. Rentals are available throughout the year and are advertised on at least one worldwide rental website. This use is not limited to one single family for "private occupancy only" and a "private dwelling," but is far more expansive and clearly violates the deed restrictions. [*Id*. at 188-189.]

After concluding that transient, short-term rentals violated the restrictive covenant, this Court nonetheless also determined that the rentals violated the commercial use prohibition, stating:

> In denying [the] plaintiffs' request for injunctive relief, the trial court focused primarily on the term "private dwelling" and spent little time discussing whether [the] defendant's actions amounted to "commercial use" of the property. We conclude that, even if the short-term rentals did not specifically violate the deed restrictions limiting the property to "private occupancy only" and "private dwelling," the rentals most assuredly violated the restrictive covenant barring "commercial use" of the property.

> In *Terrien* [*v Zwit*, 467 Mich 56; 648 NW2d 602 (2002)], our Supreme Court noted:

>> The operation of a "family day care home" for profit is a commercial or business use of one's property. We find this to be in accord with both the common and the legal meanings of the terms "commercial" and "business." "Commercial" is commonly defined as "able or likely to yield a profit." *Random House Webster's College Dictionary* (1991). "Commercial use" is defined in legal parlance as "use in connection with or for furtherance of a profit-making enterprise." Black's Law Dictionary (6th ed). "Commercial activity" is defined in legal parlance as "any type of business or activity which is carried on for a profit." *Id.* [*Terrien*, 467 Mich at 63-64.]

> We conclude that, under the definitions set forth in *Terrien*, the act of renting property to another for short-term use is a commercial use, even if the activity is residential in nature.

> We specifically adopt this Court's reasoning in *Enchanted Forest Prop Owners Ass'n v Schilling*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2010 (Docket No. 287614). The defendants in *Enchanted Forest* "occasionally rented out their property, typically for periods of one week or less, for a rental fee." *Id*. at 5-6. The rentals were not as frequent as those in the case at bar; the records in *Enchanted Forest* revealed "that the property was rented for 33 days in 2005, 29 days in 2006, 34 days in 2007, and 31 days between January 1 and March 31, 2008." *Id.* This Court concluded that such short-term rentals violated the restrictive covenants prohibiting commercial use of the property:

>> There is no dispute that [the] defendants contracted with an agency to advertise their property as a vacation rental and did, in fact, rent the property for a fee. Although the financial documentation submitted by [the] defendants shows that [the] defendants did not make a profit when renting their property, this is not dispositive of whether the commercial purpose prohibition was violated. [The d]efendants clearly indicated that they rented out the

-9-

property to transient guests. Use of the property to provide temporary housing to transient guests is a commercial purpose, as that term is commonly understood. The trial court properly granted summary disposition in favor of the EFPOA on the basis of Article XI of the deed restrictions.

"Commercial use," which is clearly prohibited in the restrictive covenant, includes short-term rentals even without resorting to technical refinement of what constitutes "private occupancy" or "private dwelling." That [the] defendant and her renters may use the property as a private dwelling is not dispositive. Short-term rentals still violate the restrictive covenant barring commercial use of the property. Because [the] defendant's commercial use of the home was in clear violation of the unambiguous restrictive covenant, the trial court should have granted [the] plaintiffs' request for injunctive relief. [*Eager*, 322 Mich App at 189-191.]

## C. APPLICATION

The restrictive covenants governing this subdivision set forth that the covenants ran with the land and bound every lot within the premises, the board had the authority to interpret and enforce the covenants for the benefit of all lots within the premises, and each lot "shall be used only for a single family private residence" and no "business of any sort" shall be conducted from or on any lot. The covenants further provided that a lot owner may lease the property to a third party, but had full liability for tenant breach of any covenants, and no nuisance shall be conducted on any lot or any activity be done thereon to constitute a nuisance.

The restrictive covenants must be examined as a whole and cannot be examined in a manner that renders part of the covenants nugatory. Although the covenants admittedly permit the lot owner to lease the premises to a third party and there is no qualification on the duration of the lease, this provision must be examined in conjunction with paragraphs 6(A) and (C). Even if leasing is permissible, the premises still "shall be used only for a single family private residence" and "no business of any sort" shall be conducted from the premises except home office activities. If continuous, year-long short-term leasing is conducted from the premises, the property is not being used as a single-family private residence. Indeed, defendant did not submit any evidence that the principals of the corporate entity resided at the home or stored items there evidencing a continuous presence or use as another residence. *O'Connor*, 459 Mich at 345-346. Moreover, a business or commercial use from the property was occurring. "Use of the property to provide temporary housing to transient guests is a commercial purpose, as that term is commonly understood." *Eager*, 322 Mich App at 190. Commercial activity is defined as business activity operated for a profit. *Id*.

In the present case, read as a whole, the leasing to third-parties that was permissible under the restrictive covenants was long-term leasing as a single-family residence. Furthermore, because the leasing was transient, short-term leasing without any permanent agent at the home, the property was solely used as a business. Indeed, defendant created a website and advertised the home's availability for short-term rentals limited to 16 occupants and five vehicles.

The trial court declined to follow the *Eager* decision because it referred to "private occupancy" not "single family private residence" and "commercial use" instead of business use. Further, the trial court noted that the *Eager* decision adopted an unpublished decision that was factually distinguishable. After determining that the facts were distinguishable, the trial court stated:

> Defendant emphasizes that tenants occupying the Property must use it as a single-family residence, as their lease indicates. The actual phrasing, in pertinent part, states, "[t]his maximum occupancy includes spouses, partners, children, family members, and other friends[.]" The agreement also clearly forbids parties or events of any kind, "including bachelor/bachelorette, family reunion parties, weddings, etc. involving guests who are not staying on the property[.]" As part of the online advertising for the Property, there is a statement in all capital letters that this Property is not the right place for anyone looking to party. Defendant also acknowledges in multiple pleadings that they are aware they are liable for any breach of the restrictive covenants by a tenant, as laid out in Covenant 6(B).

> This Court finds that Defendant is not in violation of this portion of Covenant 6(A) in renting the Property for single-family residential use only. Should there be evidence proving Defendant is renting to a group that would fall outside the single-family private residence determination discussed here at any point, Plaintiff has remedies available under the enforcement provision of the Covenants, Covenant 34.

The advertisement for the lot at issue identified as Hazelnut Haus and described it as "family friendly," but it contained no caveat that the rental was limited to single-family private residential. Additionally, the lease agreement also did not advise that it was limiting its rental to families. Rather, the lease in paragraph 6 addressed maximum occupancy[3] and stated:

> The maximum number of guests for this property is strictly limited to 16 persons of any age.

> Please do not plan on more than 16 people. This maximum occupancy includes spouses, partners, children, family members, and other friends who may be staying overnight nearby at campgrounds or other properties and who may use the toilets, showers, kitchen, and property in general. Renters who have more than 16 people will be asked to leave and will forfeit their deposit. When Renters have more than 16 people, it is very hard on the septic system and plumbing. It also causes extra wear and tear on the property and can be grounds for our home insurance to deny coverage of the property. In addition, property owners in our Association and also the town of Pentwater, do not appreciate renters who overcrowd properties and

---

[3] It appears that defendant later reduced the maximum occupancy to 14 persons and also eliminated the policy allowing for pets.

-11-

create nuisances for others. If the maximum occupancy gets abused, our Association and/or the township may vote not to allow rentals.

The maximum number of vehicles allowed is 5. If you will have more than 5 vehicles, please contact Trystin to discuss. Per our Association vehicles at this property must park in the driveway. Please do not park on the lawn or on the road. The Hart exit has an MDOT parking lot.

Contrary to the trial court's conclusion, defendant did not require and enforce a single-family residence provision. Rather, it apprised its lessees that the rental property was limited to 16 people and that family members were included in the computation of 16 people. The lease did not seek to enforce the single-family private residence requirement of the restrictive covenants. There was no indication that lessees were required to identify and name their "single-family" members or certify that single-family occupancy occurred.

To avoid the interpretation of the plain language of the restrictive covenants, defendant submits that the board contemplated amending the covenants to address short-term rentals but declined to do so. From the language of the minutes, it is not apparent whether there was a belief that the covenants currently allowed for short-term rentals or not. However, Patricia Davidson, the president of the board, submitted an affidavit. She indicated that there was a meeting at which short-term rentals were discussed. In order to amend the restrictive covenants to permit short-terms rentals, there would need to be an agreement by 77 of the lot owners. At that time, the board declined to bring the matter before the lot owners for a vote. Davidson also noted that there were three lot owners that engaged in short-term rentals. All three were sent cease-and-desist letters but defendant declined to follow it and continued to engage in short-term rentals. We conclude that the language of the restrictive covenants is plain and must be read in context. Although leasing of the premises was permitted, it did not allow a lot owner to deviate from using the premises as a single-family residential home. Advertising the property on the worldwide web for lease to up to 16 people on a year-round basis changed the character of the use from single-family residential into a business operation of the premises. Moreover, the attempt to consider parol evidence does not result in a deviation from the interpretation in accordance with the plain language. Accordingly, the trial court erred in granting summary disposition to defendant under MCR 2.116(C)(10), and summary disposition was appropriate in favor of plaintiff under MCR 2.116(I)(2). In light of this conclusion, defendant was not entitled to attorney fees and costs.

Reversed and remanded for entry of an order granting summary disposition in favor of plaintiff. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica