O'CONNOR v RESORT CUSTOM BUILDERS, INC

Docket No. 109832. Decided February 25, 1999. On application by the plaintiffs for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.    Rehearing denied *post*, 1251.

Joseph L. O'Connor and certain other owners of real property in the Valley View subdivision of Shanty Creek resort in Antrim County, and the Shanty Creek Lodge Association, Inc., brought an action in the Antrim Circuit Court, Thomas G. Power, J., against Resort Custom Builders, Inc., and others, to enforce deed covenants and restrictions on subdivision lots for single-family residential purposes. The plaintiffs were objecting to Resort Custom Builders' use of one home for interval ownership or timesharing. The court enjoined timeshare sales. The Court of Appeals, HOEKSTRA, P.J., and MURPHY and SMOLENSKI, JJ., reversed in an unpublished opinion per curiam (Docket No. 189691). The plaintiffs seek leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices BRICKLEY, KELLY, TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

1. Past Supreme Court decisions regarding restrictions on the use of real property are premised on two essential principles: that owners of land have broad freedom to make legal use of their property, and that courts normally must enforce unwaived restrictions on which the owners of other similarly burdened property have relied. The circumstances of each case determine whether a particular use is prohibited by a residential restriction.

2. A residence is a place where someone lives and has a permanent presence, whether physically there or not. A weekly owner has no right to be at a timeshare home anytime other than during the week purchased. There is no permanence to the presence, either psychologically or physically at the location. Thus, division of the home into one-week timeshare intervals is not a use for residential purposes as that term is used in the building and use restrictions.

3. Whether the plaintiffs waived the use restriction by allowing short-term rentals elsewhere, such an alternative use is different in

character and does not amount to a waiver of enforcement against interval ownership. Further, the defendants did not demonstrate that the occasional rentals have altered the character of the Valley View subdivision to an extent that would defeat the original purpose of the restrictions.

Justice CAVANAGH concurred in the result only.

Reversed.

*Smith & Johnson, Attorneys, P.C.* (by *H. Wendell Johnson* and *Barbara A. Assendelft*), and *McClelland & Anderson, L.L.P.* (by *Gregory L. McClelland*), for the plaintiffs-appellants.

*Running, Wise, Wilson, Ford & Phillips, P.L.C.* (by *Thomas J. Phillips, Jr.*, and *Shelley A. Kester*), for defendants-appellees.

PER CURIAM. A developer sought to sell interval ownership interests in a home located in a subdivision restricted to private residences. The circuit court enjoined the sales, but the Court of Appeals reversed. We reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

The Shanty Creek resort is a large development in Antrim County. Spread across many of its acres are golf courses, downhill and cross-country skiing areas, tennis courts, swimming pools, homes, condominiums, a hotel and convention center, and other recreational facilities. The residential portions of Shanty Creek include a number of separate areas for homes and condominiums. One of these is the Valley View subdivision, consisting of fifty-six lots in the northern part of the resort.

Development of Valley View is governed by a "declaration of restrictions" executed in November 1968 and amended in May 1970. Among the restrictions are the following:

USE OF PROPERTY

No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than for the purpose of one single dwelling not to exceed two stories in height.

* * *

CHARACTER OF BUILDINGS

(a) No building shall be erected on any lot except a single, private dwelling of one, one-and-a-half or two stories, or a multi-level dwelling not exceeding two stories in height, and to be occupied by not more than one (1) family, for residence purposes only, and a private garage.

* * *

SEVERABILITY OF PROVISIONS

Invalidation of any of the covenants, conditions or limitations in this instrument contained by Judgment or Court Order, shall not in any wise affect any of the other covenants, conditions and limitations which shall remain in full force and effect.

ENFORCEMENT OF RESTRICTIONS

If any person shall violate or attempt to violate any of the covenants or restrictions herein contained, it shall be lawful for any other person or persons owning any lot or building site in said subdivision to prosecute any proceeding at law or in equity against such person or persons, either to prevent them from so doing or to recover damages or other dues for such violation.

The restrictions are silent with regard to "interval ownership" or "timesharing" arrangements, under

which a person owns an occupancy right for a defined period each year.

Resort Custom Builders, Inc., constructed a home on Lot 7 of the Valley View subdivision. After its initial attempt to sell the home outright failed, Resort Custom Builders decided to market "interval ownership" shares. In a detailed January 27, 1994 document entitled "Declaration of Covenants[:] Conditions and Restrictions for Interval Ownership," Resort Custom Builders established the rights and responsibilities of those who would participate in the venture. Basically, a purchaser would buy occupancy rights in one or more week-long "intervals," along with a corresponding undivided interest in the property. Resort Custom Builders intended to sell occupancy rights for forty-eight weeks of the year, with four weeks reserved for maintenance. As is typical in time-sharing arrangements, interval owners could place their occupancy rights in commercial pools that facilitate trades with those who have occupancy rights in homes at other resorts.

Interval ownership in condominiums exists in other portions of Shanty Creek, but it is explicitly authorized by the documents governing development. Shanty Creek, however, also facilitates daily and weekly rentals of homes in Valley View and other residential areas. Some homeowners in Valley View rent their homes for use by other persons using this procedure. At least one home in Valley View is jointly owned by friends, and, as one would expect, many of the homes are jointly owned by married persons.

In March 1994, several Valley View property owners and the Shanty Creek Lodge Association sued to enjoin Resort Custom Builders from selling interval

ownership interests. Plaintiffs claimed that interval ownership violated the use and character restrictions applicable to the property. The following month, Resort Custom Builders sold two one-week shares to Fred and Janet Ruppert, who financed the purchase with a mortgage to Franklin Bank, N.A.

The trial court thereafter heard cross-motions for summary disposition. At that time, the court opined that the restrictions governing development in the Valley View subdivision did not permit interval ownership. The court issued a preliminary injunction, barring the sale of interval-ownership interests in Lot 7. The court, however, did not grant summary disposition for plaintiffs because it postponed consideration of defendants' defenses including estoppel and waiver premised on Shanty Creek's practice of allowing the short-term rental of homes in Valley View.

In early 1995, the court added the Rupperts and Franklin Bank as defendants. Plaintiffs filed an amended complaint. At the conclusion of the bench trial, the court determined that short-term rental is different in character from interval ownership, and held that Shanty Creek's practice of allowing the former did not waive its right to prohibit the latter. Among the cited differences the court explained that there remains a single known owner in a rental whom neighboring property owners can contact if a renter causes problems.

With regard to multiple ownership of a single residence, the trial court declined to "wade into the abstract question of how many owners it would take to become a violation of Valley View restrictions . . . ." Citing testimony that daily and weekly rental of private homes had not been extensive, the

court likewise found it unnecessary to decide whether renting a house for a substantial portion of the year would violate the restrictions of the subdivision. Accordingly, the trial court declared the January 27, 1994 covenants, conditions, and restrictions for interval ownership null and void. In a declaratory judgment and permanent injunction, the court set aside the interval ownership document, as well as the Rupperts' purchase and the accompanying mortgage.[1]

The Court of Appeals reversed.[2] It explained that the law favors the free use of property, and held that interval ownership was not incompatible with "residential purposes."

> Restrictive covenants are construed strictly against those claiming the right to enforce them, and all doubts are resolved in favor of the free use of property. *Beverly Island Ass'n v Zinger*, 113 Mich App 322, 325; 317 NW2d 611 (1982). A restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business use. *Id.* at 326. A business use "may not violate a residential use covenant so long as the nonresidential use was casual, infrequent or unobtrusive and was not detrimental to the property values of neighbors." *Id.*, citing *Wood v Blancke*, 304 Mich 283; 8 NW2d 67 (1943). The focus must be on the activity involved and how it parallels the ordinary and common meaning of use for residential purposes. *Zinger, supra* at 327.
>
> We construe the covenant in favor of defendants and hold that based on the evidence presented, while interval ownership may be a business use, we find no reason to believe that nonresidential use associated with interval ownership will be obtrusive and detrimental to the property value of

---

[1] The trial court chose not to determine defendants' rights vis-à-vis each other because they were jointly represented by counsel.

[2] Unpublished opinion per curiam, issued April 11, 1997 (Docket No. 189691).

neighbors. The testimony at trial indicated that it was acceptable for homeowners to rent out their homes on a weekly basis all year long. While the type of ownership is different, in terms of use, we find that distinguishing interval ownership from year around renting creates a distinction without a difference.

The plaintiffs have applied to this Court for leave to appeal.

II

This Court has never considered whether a residential-purposes restriction bars interval ownership or timesharing. We have, however, outlined the governing principles in previous opinions.

In *Wood v Blancke, supra* at 286, a dispute arose in a subdivision permitting "one single residence" on each lot, and restricting use to "residence purposes only." Several residents sued to prevent a fellow property owner from maintaining a sizable flock of racing pigeons at his home.

Examining the situation in *Wood*, this Court emphasized that "all doubts are resolved in favor of the free use of property." *Id.* at 287. This principle is fundamental, and elsewhere we have refused to infer restrictions that are not expressly provided in the controlling documents. *Margolis v Wilson Oil Corp*, 342 Mich 600, 603; 70 NW2d 811 (1955).

We also emphasized in *Wood* the importance of protecting homeowners who rely on a restriction that their subdivision will be limited to residential purposes:

> Restrictive covenants in deeds are construed strictly
> against grantors and those claiming the right to enforce

them, and all doubts are resolved in favor of the free use of property. *James v Irvine*, 141 Mich 376 [104 NW 631 (1905)]. Notwithstanding this rule of construction, covenants restricting the erection of any building except for dwelling house purposes have been held to apply to the use as well as to the character of the building; and in strictly residential neighborhoods, where there has always been compliance with the restrictive covenants in the deeds, nullification of the restrictions has been deemed a great injustice to the owners of property. *Boston-Edison Protective Ass'n v Goodlove*, 248 Mich 625 [227 NW 772 (1929)]. It is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings. *Swan v Mitshkun*, 207 Mich 70 [173 NW 529 (1919)]. The court said in *Johnstone v Detroit, G H & M R Co*, 245 Mich 65, 74 [222 NW 325 (1928)] (67 ALR 373):

"Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy. The courts have long and vigorously enforced them by specific mandate. This court has expressly recognized that the right of privacy for homes is a valuable right. *Signaigo v Begun*, 234 Mich 246 [207 NW 799 (1926)]." [*Wood* at 287-288.]

The value placed on residential restrictions can be seen in this Court's decision to enforce a "single dwelling house" restriction in *Carey v Lauhoff*, 301 Mich 168; 3 NW2d 67 (1942). The plaintiffs in that case invoked the restriction to block the operation of a rooming house, even though there may have been as many as twenty-three other rooming houses in the subdivision of 189 lots. This Court affirmed the trial court's finding that the plaintiffs had not waived the restrictive covenant because there was no outward indication that the area had lost its residential character and the plaintiffs had been "somewhat active in

instituting suits and in giving notices to persons who sought to violate the restrictions."[3] *Id.* at 174.

Our decisions are premised on two essential principles, which at times can appear inconsistent. The first is that owners of land have broad freedom to make legal use of their property. The second is that courts must normally enforce unwaived restrictions on which the owners of other similarly burdened property have relied.[4]

To harmonize those principles and apply them properly, this Court has recognized the necessity of deciding such matters on a case-by-case basis. The circumstances of each case thus determine whether a particular use is prohibited by a residential restriction. As we explained in *Wood*:

> No clear and definite line can be drawn as to residential use of premises. It is a safe rule that the usual, ordinary and incidental use of property as a place of abode does not violate a covenant restricting such use to "residential purposes only," but that an unusual and extraordinary use may constitute a violation. Each case must be determined on its own facts, and it cannot be said that the maintenance and breeding of a flock of racing pigeons is the usual, ordinary or incidental use of one's property for "residential purposes only." [*Id.* at 288-289.]

---

[3] In a case involving a commercial restriction, this Court enforced a ban on "'the manufacture or sale of spirituous or malt liquors'" even though the sellers had been in business for several years under licenses issued by the Liquor Control Commission. *Grandmont Improvement Ass'n v Liquor Control Comm*, 294 Mich 541, 542; 293 NW 744 (1940).

[4] Another consideration is present in a small number of cases. Some uses are themselves especially favored or disfavored, and public policy considerations can thus play a role. See, for example, *Beverly Island Ass'n v Zinger, supra*. Interval ownership is neither favored nor disfavored to such an extent that public policy shades our decision today.

With regard to whether a restriction has been waived, we likewise have said that "[w]hether or not there has been a waiver of a restrictive covenant or whether those seeking to enforce the same are guilty of laches are questions to be determined on the facts of each case as presented." *Grandmont Improvement Ass'n v Liquor Control Comm*, 294 Mich 541, 544; 293 NW 744 (1940).

## III

As indicated, this Court has not decided a case involving interval ownership. Appellate courts of other jurisdictions have decided cases that bear some similarity, but these decisions are neither recent nor on all fours with the present case.[5] We thus turn to

---

[5] In *Forbes v Schaefer*, 226 Va 391, 397; 310 SE2d 457 (1983), the Virginia Supreme Court did not reach the question whether a timesharing arrangement violated a subdivision's restrictions. The Supreme Judicial Court of Massachusetts held in *Madaket Realty, Inc v Bd of Appeals of Nantucket*, 402 Mass 137; 521 NE2d 723 (1988), that a ban on timesharing did not apply to single-family residences, but a local zoning ordinance expressly prohibited timesharing in another sort of living unit. Timeshares in a condominium apartment restricted use "solely to residential purposes" were permitted in *Laguna Royale Owners Ass'n v Darger*, 119 Cal App 3d 670, 676; 174 Cal Rptr 136 (1981), but that decision does not concern a subdivision of separate single-family homes. In *Reefshare, Ltd v Nagata*, 70 Hawaii 93, 100-101; 762 P2d 169 (1988), the Hawaii Supreme Court considered a statute that allowed timeshares if " 'explicitly and prominently authorized by the project's instruments.' " The court concluded that a provision restricting use of apartments to a "permanent or temporary residence and for no other purpose" did not explicitly authorize timesharing. *Id.* at 101. The Hawaii Intermediate Court of Appeals would not hold that weekly rentals violated a residential zoning provision in *Maui Co v Puamana Management Corp*, 2 Hawaii App 352, 358; 631 P2d 1215 (1981). In *White Egret Condominium, Inc v Franklin*, 379 So 2d 346, 352 (Fla, 1979), the Florida Supreme Court held that two brothers and their families could own and occupy a condominium apartment without violating a single-family-residence restriction. The United States Bankruptcy Court for the District of New Jersey held in *In re 560 Ocean Club, LP*, 133 BR 310 (1991), that apartments restricted to use as private resi-

our statement in *Wood* "that the usual, ordinary and incidental use of property as a place of abode does not violate the covenant restricting such use to 'residential purposes only,' but that an unusual and extraordinary use may constitute a violation," and our accompanying caution that "[e]ach case must be determined on its own facts." *Id.* at 288-289.

Proceeding on that basis, we return to the trial court's analysis. We conclude that its reasoning is sound, and adopt it as our own:

> [W]hat's a residential purpose is the question. Well, a residence most narrowly defined can be a place which would be one place where a person lives as their permanent home, and by that standard people could have only one residence, or the summer cottage could not be a residence, the summer home at Shanty Creek could not be a residence if the principal residence, the place where they permanently reside, their domicile is in some other location, but I think residential purposes for these uses is a little broader than that. It is a place where someone lives, and has a permanent presence, if you will, as a resident, whether they are physically there or not. Their belongings are there. They store their golf clubs, their ski equipment, the old radio, whatever they want. It is another residence for them, and it has a permanence to it, and a continuity of presence, if you will, that makes it a residence.

The trial court then correctly determined that interval ownership did not constitute a residential purpose under the circumstances of this case:

> I don't think that's true of weekly—of timeshare units on a weekly basis of the kind, at least, of the kind being dis-

---

dences could be leased for short terms, but the case is distinguishable on several grounds, including the special considerations that attend bankruptcy litigation.

cussed here, which includes trading, and is a traditional—usually associated with condominiums, but in this case happens to be instead of an apartment happens to be a building that is a single family building other than this arrangement for its joint ownership by, at least, up to forty-eight people in this case. The people who occupy it, or who have these weekly interests in this property, they have the right to occupy it for one week each year, but they don't have any rights, any occupancy right, other than that one week. They don't have the right to come whenever they want to, for example, or to leave belongings there because the next resident, who is a one-fiftieth or one forty-eighth co-owner has a right to occupy the place, too, and the weekly owner has no right to be at the residence at anytime other than during their one week that they have purchased. That is not a residence. That is too temporary. There is no permanence to the presence, either psychologically or physically at that location, and so I deem that the division of the home into one-week timeshare intervals as not being for residential purposes as that term is used in these building and use restrictions . . . .

With regard to whether plaintiffs waived the use restriction by allowing short-term rentals, we agree with the circuit court that such an alternative use is different in character and does not amount to a waiver of enforcement against interval ownership. Further, defendants have not demonstrated that the occasional rentals have altered the character of the Valley View subdivision to an extent that would defeat the original purpose of the restrictions. *Carey* at 173-175.

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.[6] MCR 7.302(F)(1).

---

[6] In the Court of Appeals, defendants raised a number of issues, not all of which were addressed by that Court in its opinion. We nevertheless

WEAVER, C.J., and BRICKLEY, KELLY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

CAVANAGH, J. I concur in the result only.

___

decline to remand this case for further consideration by the Court of Appeals because reinstatement of the circuit court judgment is the proper result.