*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN ALDRICH and JOSEPH MACHINIAK,

Plaintiffs-Appellees,

v

SUGAR SPRINGS PROPERTY OWNERS
ASSOCIATION, INC.,

Defendant-Appellant.

FOR PUBLICATION
January 12, 2023
9:15 a.m.

No. 359664
Gladwin Circuit Court
LC No. 20-010521-CH

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order granting plaintiffs' motion for summary disposition under MCR 2.116(C)(10) and denying defendant's countermotion for summary disposition under MCR 2.116(I)(2). We reverse and remand for entry of an order granting summary disposition in favor of defendant.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant is composed of thousands of properties located within the Sugar Springs Development (Sugar Springs) complex in Gladwin County. Both plaintiffs are members of, and own property in, Sugar Springs.[1] Sugar Springs is governed by a "Declaration of Covenants and Restrictions" (the Covenant) executed in 1971. The Covenant's preamble delineated the developer's intent to create "a general plan, integrating clusters of residential lots, residential

---

[1] In the lower court record, plaintiffs did not specifically identify their lot numbers or whether the ownership interest involved a single residential property or condominium. Additionally, plaintiffs provided no information regarding the lease, frequency, duration, or charge for any property rental. Nonetheless, defendant did not challenge plaintiffs' standing to file their complaint. The complaint did disclose that plaintiff Susan Aldrich was a resident of Wayne County and that plaintiff Joseph Machiniak resided in Oakland County.

-1-

condominium property, commercial property, recreational improvements to include areas designated for camping, and permanent green areas or other open spaces." Relevant to this appeal, the Covenant provides that "all Lots in the development shall be used for residential purposes only." Any construction on the lots was limited to single-family residences[2] unless expressly designated for multi-family or commercial use on the plat. The construction of a home or outbuilding were subject to rules regarding size, setbacks, and foundation. Property owners could not cut more than 25% of the dominant trees in the area. An architectural and environmental control (AEC) committee was created to review plans and ensure continuity of improvements. The only sign permitted on a property was for identification purposes, and fences were prohibited. A "for sale" sign could be placed on the property with the consent of the developer or the AEC committee. The developer had the right to designate areas for condominium development, and these areas also were limited "for residential purposes only."

Defendant's board of directors held a meeting on May 22, 2020. During this meeting, the board discussed complaints from members regarding properties being used as short-term rentals. The board discussed the issue with their general manager, board president, and attorney and examined the pertinent language of the bylaws and current legal authorities. The board received an opinion by letter indicating that short-term rentals were not permitted under their existing covenants and bylaws. Nonetheless, after additional discussion of the positive and negative consequences of allowing short-term rentals, a motion and resolution were read to the board. This resolution prohibited rental of properties located within Sugar Springs unless the lease was for a period of six months or longer. In light of the impact on members, the resolution passed but would not take effect until January 1, 2021.

Apparently, plaintiffs had rented out their respective properties as short-term vacation homes for periods less than six months. Plaintiffs filed suit, seeking declaratory relief that they were not prohibited from using the property as short-term residential rentals and that defendant could not prohibit or punish them for engaging in such activity. After the litigation was filed, the trial court issued a stay of the resolution barring short-term rentals pending resolution of the case.[3]

Plaintiffs moved for summary disposition under MCR 2.116(C)(10), alleging that no material facts were in dispute and short-term rentals were permitted under the Covenant. In opposition, defendant asserted that summary disposition was premature prior to the completion of discovery, factual issues existed, and the Covenant did not permit plaintiffs' use. At the conclusion of oral argument, the trial court granted the dispositive motion, adopting the argument presented by plaintiffs. Defendant sought reconsideration and requested that summary disposition be granted

---

[2] Article IV, § 3 of the Covenants provided, "Construction on all properties shall be limited to a single[-]family residence unless otherwise designated for multi-family or commercial use on the plat."

[3] The complaint also raised a second count, seeking review of the corporate books and records of defendant. The trial court granted a second motion for summary disposition in favor of plaintiff of this claim. The ruling addressing the corporate records is not at issue in this appeal. Additionally, the import of the resolution expressly addressing short-term rentals and the propriety of its passage was not addressed in the trial court, and it is also not an issue raised on appeal.

in its favor. Plaintiffs moved to strike the reconsideration motion, asserting that it merely presented the same grounds addressed in the previous ruling rendered by the trial court. The trial court denied plaintiffs' motion to strike and issued a lengthy written opinion explaining why it granted summary disposition in plaintiffs' favor. Defendant now appeals.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021). If it appears that summary disposition is proper in favor of the opposing party, instead of the moving party, summary disposition may be granted under MCR 2.116(I)(2). *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 586; 977 NW2d 128 (2021).

## III. ANALYSIS

Defendant contends that the trial court erred in its application of caselaw to the Covenant because summary disposition was proper in its favor under MCR 2.116(I)(2). We agree.

The trial court's interpretation of restrictive covenants presents a question of law that this Court reviews de novo. *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015). The interpretation of a contractual agreement also presents a question of law subject to de novo review. *Id*. Restrictive covenant cases are examined on a case-by-case basis. *O'Connor v Resort Custom Builders*, 459 Mich 335, 343; 591 NW2d 216 (1999); *Eager v Peasley*, 322 Mich App 174, 180; 911 NW2d 470 (2017). Contracts must be read as a whole. Courts must give effect to every word, clause, and phrase, and avoid a construction that would render any part of the contract surplusage or nugatory. *Magley v M & W Inc*, 325 Mich App 307, 317-318; 926 NW2d 1 (2018).

> Operating agreements, such as a corporation's bylaws, are intended to govern the future conduct of the entity and its members. Generally, an entity's bylaws or membership agreement may provide for the regulation and management of its affairs as long as the provision is not inconsistent with law or the articles authorizing the entity. When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members. In this case, the parties do not dispute that the Association had the authority to adopt bylaws and that the bylaws were adopted by a majority of the Association's members. Thus, to the extent that they do not conflict with the Association's articles of incorporation or this state's law, the bylaws would constitute a binding contractual agreement between the Association and its various members. [*Conlin*, 313 Mich App at 254-255 (citations omitted).]

-3-

Our Supreme Court recognized that restrictive covenants or deed restrictions are valuable because they preserve characteristics desired by those seeking a familial environment:

> Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property. Such deed restrictions generally constitute a property right of distinct worth. Deed restrictions preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment. If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land. Such contracts allow the parties to preserve desired aesthetic or other characteristics in a neighborhood, which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties. [*Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007) (citations, quotation marks, and brackets omitted).]

In *Eager*, this Court set forth the following principles to interpret restrictive covenants:

> In construing restrictive covenants, the overriding goal is to ascertain the intent of the parties. Where the restrictions are unambiguous, they must be enforced as written. The language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon. [*Eager*, 322 Mich App at 180-181 (citations, quotation marks, and brackets omitted).]

In *O'Connor*, 459 Mich at 337-338, the defendant developer constructed a home located in the Valley View subdivision of Shanty Creek. After it was unable to sell the home, it marketed shares of "interval ownership;" this meant a purchaser bought occupancy rights in one or two week-long intervals. An interval owner could submit their occupancy rights to a commercial pool and trade with individuals who had occupancy rights in homes at other resorts. Interval ownership was not expressly permitted by the governing documents. However, Shanty Creek did facilitate daily and weekly rentals of Valley View homes. The plaintiff property owners sued to enjoin the defendant from selling interval ownership interests. *Id*. at 338-339.

The trial court held that the restriction governing the development in the Valley View subdivision did not permit interval ownership. The trial court determined that short-term rentals were different in character than interval ownership and did not result in a waiver of the right to prohibit the latter. In the context of single, as opposed to interval, ownership, the single owner was known to neighbors and could be contacted if a renter caused a problem. The Court of Appeals reversed, concluding that the law favored the free use of property and interval ownership was not incompatible with "residential purposes." *Id*. at 339-340. Our Supreme Court reversed this Court and reinstated the trial court's decision, stating:

[W]e return to the trial court's analysis. We conclude that its reasoning is sound, and adopt it as our own:

> What's a residential purpose is the question. Well, a residence most narrowly defined can be a place which would be one place where a person lives as their permanent home, and by that standard people could have only one residence, or the summer cottage could not be a residence, the summer home at Shanty Creek could not be a residence if the principal residence, the place where they permanently reside, their domicile is in some other location, but I think residential purposes for these uses is a little broader than that. It is a place where someone lives, and has a permanent presence, if you will, as a resident, whether they are physically there or not. Their belongings are there. They store their golf clubs, their ski equipment, the old radio, whatever they want. It is another residence for them, and it has a permanence to it, and a continuity of presence, if you will that makes it a residence.

The trial then correctly determined that interval ownership did not constitute a residential purpose under the circumstances of this case:

> I don't think that's true of weekly—of timeshare units on a weekly basis of the kind, at least, of the kind being discussed here, which includes trading, and is a traditional—usually associated with condominiums, but in this case happens to be instead of an apartment happens to be a building that is a single family building other than this arrangement for its joint ownership by, at least, up to forty-eight people in this case. The people who occupy it, or who have these weekly interests in this property, they have the right to occupy it for one week each year, but they don't have any rights, any occupancy right, other than that one week. They don't have the right to come whenever they want to, for example, or to leave belongings there because the next resident, who is a one-fiftieth or one forty-eighth co-owner has a right occupy the place, too, and the weekly owner has no right to be at the residence at anytime other than during their one week that they have purchased. That is not a residence. That is too temporary. There is no permanence to the presence, either psychologically or physically at that location, and so I deem that the division of the home into one-week timeshare intervals as not being for residential purposes as that term is used in these building and use restrictions . . . .

With regard to whether [the] plaintiffs waived the use restriction by allowing short-term rentals, we agree with the circuit court that such an alternative use is different in character and does not amount to a waiver of enforcement against interval ownership. Further, [the] defendants have not demonstrated that the

occasional rentals have altered the character of the Valley View subdivision to an extent that would defeat the original purpose of the restrictions. [*Id.* at 345-346.]

In *Eager*, the plaintiffs filed suit to preclude the defendant, a neighboring property owner, from renting out a lake house for transient short-term use, alleging that such use violated a restrictive covenant and constituted a nuisance. The plaintiffs relied on the deed restrictions that limited the defendant's use of the property to "private occupancy" and prohibited "commercial use" of the premises. The defendant advertised the property for rent on a national website, the renter had to be at least 26 years old, and the rental was limited to 10 guests. There was no rental or business office at the home, and no housekeeping or food services were offered. *Eager*, 322 Mich App at 177-179. The trial court found that the restrictive covenant was ambiguous, consequently, free use of the property, including transient, short-term rentals, were permissible. *Id.* at 177.

The *Eager* Court noted that the restrictive covenant at issue provided, in part:

that the premises shall be used for private occupancy only; that no building to be erected on said lands shall be used for purposes otherwise than as a private dwelling and such buildings as garage, ice-house, or other structures usually appurtenant to summer resort dwellings are to be at the rear of said dwellings; that such dwelling shall face the lake unless otherwise specified; that no commodities shall be sold or offered for sale upon said premises and no commercial use made thereof . . . . [*Id.* at 179.]

This Court discussed the law governing restrictive covenants and then concluded:

We reject [the] defendant's tortured attempt at reading an ambiguity into the restrictive covenant that simply does not exist. [The d]efendant's transient, short-term rental usage violates the restrictive covenant requiring "private occupancy only" and "private dwelling." [The d]efendant, who lives in a neighboring county, does not reside at the property. She rents the property to a variety of groups, including tourists, hunters, and business groups. Those using the property for transient, short-term rental have no right to leave their belongings on the property. Rentals are available throughout the year and are advertised on at least one worldwide rental website. This use is not limited to one single family for "private occupancy only" and a "private dwelling," but is far more expansive and clearly violates the deed restrictions. [*Id.* at 188-189.]

After concluding that transient, short-term rentals violated the restrictive covenant, this Court nonetheless *also* determined that the rentals violated the commercial use prohibition, stating:

In denying [the] plaintiffs' request for injunctive relief, the trial court focused primarily on the term "private dwelling" and spent little time discussing whether [the] defendant's actions amounted to "commercial use" of the property. *We conclude that, even if the short-term rentals did not specifically violate the deed restrictions limiting the property to "private occupancy only" and "private*

*dwelling,"* the rentals most assuredly violated the restrictive covenant barring *"commercial use"* of the property.

In *Terrien* [*v Zwit*, 467 Mich 56, 63-64; 648 NW2d 602 (2002)], our Supreme Court noted:

> The operation of a "family day care home" for profit is a commercial or business use of one's property. We find this to be in accord with both the common and the legal meanings of the terms "commercial" and "business." "Commercial" is commonly defined as "able or likely to yield a profit." *Random House Webster's College Dictionary* (1991). "Commercial use" is defined in legal parlance as "use in connection with or for furtherance of a profit-making enterprise." Black's Law Dictionary (6th ed). "Commercial activity" is defined in legal parlance as "any type of business or activity which is carried on for a profit." *Id.* [*Terrien*, 467 Mich at 63-64.]

We conclude that, under the definitions set forth in *Terrien*, the act of renting property to another for short-term use is a commercial use, even if the activity is residential in nature.

We specifically adopt this Court's reasoning in *Enchanted Forest Prop Owners Ass'n v Schilling*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2010 (Docket No. 287614). The defendants in *Enchanted Forest* "occasionally rented out their property, typically for periods of one week or less, for a rental fee." *Id*. at 5-6. The rentals were not as frequent as those in the case at bar; the records in *Enchanted Forest* revealed "that the property was rented for 33 days in 2005, 29 days in 2006, 34 days in 2007, and 31 days between January 1 and March 31, 2008." *Id.* This Court concluded that such short-term rentals violated the restrictive covenants prohibiting commercial use of the property:

> There is no dispute that [the] defendants contracted with an agency to advertise their property as a vacation rental and did, in fact, rent the property for a fee. Although the financial documentation submitted by [the] defendants shows that [the] defendants did not make a profit when renting their property, this is not dispositive of whether the commercial purpose prohibition was violated. [The d]efendants clearly indicated that they rented out the property to transient guests. Use of the property to provide temporary housing to transient guests is a commercial purpose, as that term is commonly understood. The trial court properly granted summary disposition in favor of the EFPOA on the basis of Article XI of the deed restrictions. [*Id*. at 8.]

"Commercial use," which is clearly prohibited in the restrictive covenant, includes short-term rentals even without resorting to technical refinement of what

constitutes "private occupancy" or "private dwelling." That [the] defendant and her renters may use the property as a private dwelling is not dispositive. Short-term rentals still violate the restrictive covenant barring commercial use of the property. Because [the] defendant's commercial use of the home was in clear violation of the unambiguous restrictive covenant, the trial court should have granted [the] plaintiffs' request for injunctive relief. [*Eager*, 322 Mich App at 189-191 (emphasis added).]

In the present case, the Covenant expressly provided that the lots and condominiums were limited to "residential purposes only." In discussing the type of building that could be constructed, the Covenant concluded that it was limited to "single family residence unless otherwise designated for multi-family or commercial use on the plat." The Covenant also expressly provided for commercial property, and it was not included within the building of a single-family residence. Instead, the developer retained the right "to designate certain areas for possible commercial development, primarily to provide for the eventual establishment of certain basic service facilities for the development and surrounding area."[4] And plaintiffs failed to identify a single-family residence that was given permission on the plat to engage in commercial activity; rather, commercial activity was limited to a specific designated area.[5] "[T]he act of renting property to another for short-term use is a commercial use, even if the activity is residential in nature," *Eager*, 322 Mich App at 190, and the lots and condominiums were limited to single-family residential use. The trial court's reliance on the failure to expressly prohibit short-term rentals or commercial use did not examine the Covenant as a whole and the intent of the developer as expressed therein.

We reject plaintiffs' contention that *O'Connor* and *Eager* are factually distinguishable and that the trial court correctly determined that the Covenant did not contain any restriction or prohibition on short-term rentals or commercial use. The *Eager* Court's primary holding was that short-term rentals violated the covenant language regarding "private occupancy" and "private dwelling." The Court did *not* rely on the commercial use prohibition in this primary holding, but reached the issue as an alternate holding. Although the phrases "private occupancy" and "private dwelling" seemingly appear different from the "residential purpose" language contained within the present case's Covenant, the *Eager* Court discussed *O'Connor*'s definition of "residential purpose" and used this to support its primary holding.

The *Eager* Court's discussion and application of *O'Connor* demonstrates that, although it involved timeshare ownership—which is admittedly factually different from short-term rentals—the *legal* reasoning of *O'Connor* is directly applicable. The *O'Connor* Court adopted the trial court's reasoning in which the focus was on a *permanent presence* and whether individuals at the property had the right to occupy it whenever they desired and to leave belongings at the property, see *O'Connor*, 459 Mich at 345-346, and the *Eager* Court reached the same conclusion under the

---

[4] Therefore, it was unnecessary to delineate that commercial use was barred at a single-family residence because commercial use property was expressly reserved elsewhere.

[5] Plaintiffs did not present any evidence regarding their presence on the premises, their intentions regarding the premises, and what possessions they left in their homes. Thus, there was no evidence of a continuous presence or use as another residence. *O'Connor*, 459 Mich at 345-346.

same rationale, see *Eager*, 322 Mich App at 188-189.  Under the circumstances, defendant, rather than plaintiffs, was entitled to summary disposition under MCR 2.116(I)(2).

Reversed and remanded for entry of an order granting summary disposition in defendant's favor.  We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica