*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMBER LAKE DRIVE PROPERTY OWNERS'
ASSOCIATION,

      Plaintiff-Appellee,

v

ETTA L. GRIBI,

      Defendant-Appellant.

UNPUBLISHED
September 18, 2025
11:05 AM

No. 369520
Antrim Circuit Court
LC No. 2023-009382-CZ

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

In this dispute involving deed restrictions in a subdivision, defendant, Etta L. Gribi, appeals by right the trial court's order granting summary disposition in favor of plaintiff, Timber Lake Drive Property Owners' Association (the Association), under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

This case involves a nine-month rental of Gribi's home in the Birch Lake Subdivision in Elk Rapids Township. The 37-lot subdivision was platted in 1967. All of the lots are encumbered by restrictions that were recorded in the Antrim County Register of Deeds in 1967. Relevantly, the restrictions state, "All lots shall be used and occupied for residential purposes only, and may not be used for business or commercial purposes." The restrictions are enforceable by any lot owner in the subdivision. The Association is a voluntary homeowner's association comprised of approximately 25 lot owners in the subdivision. In July 2022, the Association recorded a sworn notice of claim in the Antrim County Register of Deeds. The notice was given under the Marketable Record Title Act, MCL 565.101 *et seq.*, and extended the restrictions for an additional 40 years.

Gribi and her late husband purchased the subject property 1972. In October 2022, Gribi moved to an assisted living facility, but retained ownership of her property. In June 2023, Gribi's son listed the property for rent under a one-year lease at $2,400 per month. Gribi intended to use the rental income toward the monthly costs for the assisted living facility. In June 2023, the Association notified Gribi's family that the proposed rental violated the restrictions because

-1-

"renting property in exchange for monetary consideration is a commercial use, even if that activity is residential in nature." The Association demanded that all rental activities cease and all advertisements listing the property for rent be removed. Gribi maintained that the restrictions only applied to short-term rentals.

Despite the Association's notice, in July 2023, Gribi executed a lease agreement for a nine-month rental term beginning on August 1, 2023, with the option to extend monthly through July 2024 and the option to enter into a new long-term lease in August 2024. The lease limited the tenant's use to "private residential purposes only." The lease specified that only the persons who signed it and "their immediate family (spouse and children) may reside at the premises." If more than three persons occupied the premises, the lease authorized Gribi to terminate "or assess additional rent of $200 each month for each additional person." The tenant was permitted to "accommodate guests for reasonable periods (up to 4 weeks)[,]" but other guest arrangements required Gribi's consent.

The Association filed suit, seeking a declaratory judgment that the restrictions prohibited all property rentals regardless of the length of the rental, that Gribi's rental violated the restrictions, and that Gribi's rental of her property must cease. Shortly after Gribi answered the complaint, the Association moved for summary disposition under MCR 2.116(C)(10) alleging there was no material factual dispute that all rentals, regardless of length, constitute commercial activity and thus violate the restrictive covenant. In response, Gribi asserted that the long-term rental of her home to a tenant for private residential purposes was a permissible residential use of the property. Alternatively, Gribi argued that because other homeowners in the subdivision had previously rented their properties on a short-term basis without a challenge from the Association, the Association waived enforcement of the restrictions against Gribi. Gribi requested that the trial court deny the Association's motion and, instead, grant summary disposition in her favor under MCR 2.116(I)(2).

At the motion hearing, the trial court determined "that long-term rentals do not violate a restriction that limits the use of a property for residential purposes only." However, the trial court concluded that the rental of Gribi's property violates the restriction prohibiting commercial activity:

> [T]he case law is very clear that short-term rentals are a commercial activity. And in the Court's mind, the logic and rationale from the case law doesn't change with the length of the rental. Here, defendant moved into an assisted living facility, and the stated purpose for what she was renting the home for was to help offset the costs for that. So the focus is a profit in order to be able to offset some of the additional costs of being in the assisted living facility.
>
> So it's clearly a commercial activity. It's being rented for a set amount; that is income for the defendant. It's a moneymaking enterprise. And the rental of defendant's property in this instance is a commercial use and purpose, in violation of the restrictions.

The trial court also rejected Gribi's waiver argument, stating:

There is [sic] 31 lots in the subdivision. One or two homes being rented a few times occurring over a few years does not constitute a waiver. Plaintiff indicates that they were not aware of the rentals occurring on one property over a longer period of time. But . . . that wouldn't change the analysis of the Court, either.

The association and the neighborhood have not lost its character because of those. It's a small number of rentals occurring over a small amount of time. So the restriction was not and is not waived by plaintiffs.

Viewing the evidence in the light most favorable to Gribi, the trial court concluded, "Rentals of any length violate the restrictive covenants at issue; in that, they are a commercial use and purpose. As such, [Gribi] is in violation of those restrictions as a matter of law." The trial court granted the Association's motion for the reasons stated on the record. The court further held:

2. All rentals of any length in the Birch Lake Subdivision (as legally described on the attached Exhibit A) are prohibited by the Restrictions dated August 10, 1967 recorded at Liber 161, Page 505, Antrim County Records ("Restrictions");

3. Defendant's current rental of her property is a violation of the Restrictions; and

4. The current tenant residing in Defendant's property is permitted to continue occupying the property until April 30, 2024.[1]

This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). "If it appears that summary disposition is proper in favor of the opposing

---

[1] April 30, 2024 was the end date of the nine-month lease. The trial court explained:

This is simply being done because I don't want to kick somebody out on the street in a Northern Michigan housing market that's extremely difficult to do. So . . . the rental was in violation of the restrictive covenants. I'm simply not kicking somebody out as part of this case. So there's no legal meaning behind what the Court just determined, but I will allow the tenant to finish out this lease, so that that person basically is not kicked out—is not homeless.

party, instead of the moving party, summary disposition may be granted under MCR 2.116(I)(2)." *Aldrich v Sugar Springs Prop Owners Ass'n*, 345 Mich App 181, 186; 4 NW3d 751 (2023).

"The trial court's interpretation of restrictive covenants presents a question of law that this Court reviews de novo." *Id*.

## III. ANALYSIS

Gribi argues that the long-term rental of her home for residential purposes does not constitute "business or commercial purposes" and thus it does not violate the restrictions. Alternatively, she asserts that the Association waived the restrictions by previously acquiescing to short-term rentals of other properties in the subdivision. Accordingly, Gribi maintains that the trial court's decision is erroneous and should be reversed. We disagree.

"A deed restriction represents a contract between the buyer and the seller of property." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007). A covenant that runs with the land "is a contract created with the intention of enhancing the value of property, and, as such, it is a valuable property right" that courts will enforce. *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) (cleaned up). Restrictive covenants "allow landowners to preserve the neighborhood's character." *Thiel v Goyings*, 504 Mich 484, 496; 939 NW2d 152 (2019). They "preserve not only monetary value, but [also] aesthetic characteristics considered to be essential constituents of a family environment." *Bloomfield Estates*, 479 Mich at 214. "[R]estrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy." *Terrien*, 467 Mich at 72 (cleaned up). "[T]he nullification of such restrictions would be a great injustice to the owners of property . . . ." *Id*. (cleaned up). "It is the function of the courts to protect such rights through the enforcement of covenants." *Id*.

Restrictive covenants are examined on a case-by-case basis. *O'Connor v Resort Custom Builders*, 459 Mich 335, 343; 591 NW2d 216 (1999). When interpreting a restrictive covenant, "the overriding goal is to ascertain the intent of the parties." *Eager v Peasley*, 322 Mich App 174, 180; 911 NW2d 470 (2017) (cleaned up). Because the foundation of a restrictive covenant lies in contract, the intent of the drafter is controlling. *Stuart v Chawney*, 454 Mich 200, 210; 560 NW2d 336 (1997). "[A]ll doubts are resolved in favor of the free use of property." *O'Connor*, 459 Mich at 342 (cleaned up). Courts must examine the language according to its plain and ordinary meaning, read restrictions as a whole, and "construe the language with reference to the present and prospective use of property." *Thiel*, 504 Mich at 496 (cleaned up). "If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land." *Bloomfield Estates*, 479 Mich at 214 (cleaned up).

In this case, the restrictions state, "All lots shall be used and occupied for residential purposes only, and may not be used for business or commercial purposes." The restrictions do not define "residential." In *Bloomfield Estates*, our Supreme Court concluded:

The term "residential" means "pertaining to residence or to residences." *Random House Webster's College Dictionary* (1997). "Residence" means "the place, esp[ecially] the house, in which a person lives or resides; dwelling place; home." *Id*. The term "residential" in the deed restriction thus refers to homes where people reside. [*Bloomfield Estates*, 479 Mich at 214.]

The Association argued to the trial court that the subject restrictions are two separate and distinct covenants—one prohibits nonresidential use while the other prohibits any business or commercial use. The Association asserted that whether Gribi's rental satisfied the residential use restriction was irrelevant because any rental, regardless of length, violates the restriction prohibiting any business or commercial use. The trial court concluded "that long-term rentals do not violate a restriction that limits the use of a property for residential purposes only." And Gribi agrees. Gribi asserts that "[t]he only issue on appeal is whether this residential use nonetheless violates the restriction that prohibits 'business or commercial' use" and she contends that it does not.

In *Terrien*, our Supreme Court discussed the following common and legal meanings of the terms "commercial" and "business":

"Commercial" is commonly defined as "able or likely to yield a profit." *Random House Webster's College Dictionary* (1991). "Commercial use" is defined in legal parlance as "use in connection with or for furtherance of a profit-making enterprise." *Black's Law Dictionary* (6th ed). "Commercial activity" is defined in legal parlance as "any type of business or activity which is carried on for a profit." *Id*. [*Terrien*, 467 Mich at 63–64.]

Relying on the definitions stated in *Terrien*, this Court determined that a defendant's short-term rental of a lake home violated a subdivision's restrictive covenant that limited the use of the premises to "private occupancy" and prohibited "commercial use" of the premises.[2] *Eager*, 322 Mich App at 179, 190. The *Eager* Court concluded, "[T]he act of renting property to another for short-term use is a commercial use, even if the activity is residential in nature." *Id*. at 190. This Court explained, "That defendant and her renters may use the property as a private dwelling is not dispositive" because "[s]hort-term rentals still violate the restrictive covenant barring commercial use of the property." *Id*. at 191. In reaching its conclusion, the *Eager* Court specifically adopted this Court's reasoning in *Enchanted Forest Prop Owners Ass'n v Schilling*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2010 (Docket No. 287614),[3] wherein this Court

---

[2] The use restrictions were recorded with the register of deeds in 1946. *Eager*, 322 Mich App at 179.

[3] Although unpublished opinions are not binding, they may be considered for their instructive or persuasive value. MCR 7.215(C)(1); *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

determined that the defendants' occasional short-term rentals of their property for one week or less violated the restrictive covenants prohibiting commercial use of the property[4]:

> There is no dispute that defendants contracted with an agency to advertise their property as a vacation rental and did, in fact, rent the property for a fee. Although the financial documentation submitted by defendants shows that defendants did not make a profit when renting their property, this is not dispositive of whether the commercial purpose prohibition was violated. Defendants clearly indicated that they rented out the property to transient guests. Use of the property to provide temporary housing to transient guests is a commercial purpose, as that term is commonly understood. The trial court properly granted summary disposition in favor of the [Enchanted Forest Property Owners Association] on the basis of Article XI of the deed restrictions. [*Eager*, 322 Mich App at 190, quoting *Enchanted Forest*, unpub op at 8.]

Similarly, in *Aldrich*, this Court determined that short-term residential rentals violated the development's restrictive covenant that limited the use of lots to "residential purposes only" unless the lot was expressly "designated for multi-family or commercial use on the plat." *Aldrich*, 345 Mich App at 194. Relying on *Eager*, the *Aldrich* Court stated, " '[T]he act of renting property to another for short-term use is a commercial use, even if the activity is residential in nature,' . . . and the lots and condominiums were limited to single-family residential use." *Id.*, quoting *Eager*, 322 Mich App at 190.

Indeed, *Eager*, *Aldrich*, *Enchanted Forest*, *Melvin R Berlin Revocable Trust* addressed short-term rentals. But in *John H. Bauckham Trust v Petter*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2017 (Docket No. 332643), p 6, a panel of this Court concluded that the trial court did not err by enjoining *all* rental activity, including long-term rentals, on subdivision lots owned by the defendants that were encumbered by deed restrictions prohibiting the use of the lots for commercial purposes. This Court explained:

> The act of renting property to a third-party for any length of time involves a commercial use because the property owner is likely to yield a profit from the activity. Restrictions barring commercial uses of property proscribe a wide variety of activities, even activities that are residential in nature, such as renting to residential tenants for extended periods of time. [*Id.* at 6.]

We find this Court's reasoning in *John H. Bauckham Trust* persuasive and adopt it here.

Reading the subject restrictions in this case as a whole, the unambiguous language expresses an intent to restrict use of the lots in the subdivision to nonbusiness and noncommercial residential use. As the *Terrien* Court noted, this Court has "recognized the distinction between a covenant permitting only residential uses and one that also expressly prohibits commercial, industrial, or business uses." *Terrien*, 467 Mich at 62, citing *Beverly Island Ass'n v Zinger*, 113

---

[4] The use restrictions were recorded with the register of deeds in 1972. *Enchanted Forest*, unpub op at 1.

Mich App 322, 326; 317 NW2d 611 (1982) (a restriction allowing residential uses is generally viewed as permitting wider uses than a restriction prohibiting business uses). Gribi has not resided at the property since 2022, and the record reflects that she has no intention of returning to the property. She intended to use the $2,400 monthly rental income to offset her monthly assisted-living expenses. Thus, Gribi was using her property "in connection with or for furtherance of a profit-making enterprise." See *Terrien*, 467 Mich at 64. Based on the definitions set for in *Terrien* and this Court's reasoning in *John H. Bauckham Trust*, we conclude that any rental of Gribi's property, regardless of length or whether it is residential in nature, violates the unambiguous restrictive covenant prohibiting commercial use of the property. Accordingly, the trial court did not err by concluding, "Rentals of any length violate the restrictive covenants at issue; in that, they are a commercial use and purpose. As such, [Gribi] is in violation of those restrictions as a matter of law."

Alternatively, Gribi argues that, even if the rental violated the restriction, the Association waived the restriction by previously acquiescing to short-term rentals of other properties in the subdivision. "[W]hether or not there has been a waiver of a restrictive covenant or whether those seeking to enforce the same are guilty of laches are questions to be determined on the facts of each case as presented." *Bloomfield Estates*, 479 Mich at 218 (cleaned up). "[I]f a plaintiff has not challenged previous violations of a deed restriction, the restriction does not thereby become void and unenforceable when a violation of a *more serious and damaging degree occurs*." *Id*. at 219 (cleaned up). As our Supreme Court explained:

> When determining whether prior acquiescence to a violation of a deed restriction prevents a plaintiff from contesting the current violation, we compare the character of the prior violation and the present violation. Only if the present violation constitutes a "more serious" violation of the deed restriction may a plaintiff contest the violation despite the plaintiff's acquiescence to prior violations of a less serious character. In general, a "more serious" violation occurs when a particular use of property constitutes a more substantial departure from what is contemplated or allowable under a deed when compared to a previous violation. Only if the present violation constitutes a "more serious" violation of the deed restriction may a plaintiff contest the violation despite the plaintiff's acquiescence to prior violations of a less serious character. That is, use that constitutes a "more serious" violation imposes a greater burden on the holder of a deed restriction than the burden imposed by a previous violation. Although determining whether a "more serious" violation occurred will hinge on the facts of a particular case, some relevant factors that may be considered include: (1) whether the later violation involved the erection of a structure where no such structure had previously been permitted; (2) whether the later violation constituted a more extensive violation of restrictions on the size or extent of a building; (3) whether the later violation increased the use of land from a sporadic violation of the restriction to a continuous violation; (4) whether the later violation significantly increased the noise or pollutant level on restricted land; (5) whether the later violation increased the level of traffic occasioned by the prior violation; (6) whether the later violation permitted an action that had been previously prohibited; and (7) whether the later violation altered in some material respect the character of the use of the restricted property. [*Id*. at 219-220 (citations omitted).]

Gribi asserts that the Association waived its right to enforce the restrictions by failing to object to other owners renting their properties short-term. One property owner, Radford Ewing, stated that he rented his property for 4 to 10 weeks annually from 1991 to 2019 with no objection from the Association. Ewing claims that other members of the Association, including the past president, were aware of his rental activity but no one objected or demanded that he stop. The Association's vice president admitted that he was aware that two lots in the subdivision had been rented out prior to him purchasing his lot in 2013—one in the summer months of 2009 and 2010 and one in the summer months of 2011 and 2012 with the use of a management company.[5] But he denied having any knowledge of Ewing's rentals or any other rentals in the subdivision. The Association's board director purchased his property in 2010. He also knew about the lot that was rented out in the summer months of 2011 and 2012, but maintained that he had no personal knowledge of any other rentals in the subdivision. The remaining three board members all denied having any knowledge of any rentals in the subdivision.

The Association contended that, since 2012, it

> has been proactive in reaching out to all proposed buyers of properties in the subdivision to let them know renting is not allowed. When properties go for sale on the street, [the Association] reviews property listings to make sure they are advertised with no rentals allowed and attempts to reach out to all new owners to introduce them to the Association and to notify them of the restrictive covenants.

> Additionally, in November 2021, when [the Association] learned that the new owners . . . of [another property in the subdivision] intended to rent out their property, [the Association] sent a letter explaining why that would not be allowed. As a result, no rentals have taken place at that property. Similarly, in November 2022, when [the Association] learned that [Gribi's] family was advertising her property for rent, [the Association] immediately reached out to explain why the rental would not be allowed.

Gribi's long-term rental constitutes a "more serious" violation of the deed restriction than the prior sporadic, short-term rentals of a few lots in the 37-lot subdivision. Gribi's long-term rental of her property will create a continuous and systemic violation of the restriction because she has no intention of moving back to her property; rather, it is her intention to continue to rent the property and use the income to offset her monthly assisted-living expenses. The use of Gribi's property as a source of income for her living expenses at the assisted living facility effectively transforms her property into a commercial enterprise. Further, the long-term rental of Gribi's property will encourage other property owners to rent their properties, which would transform the character of the subdivision. Moreover, before Gribi's property was rented, the Association notified Gribi's family that the proposed rental violated the restrictions because "renting property in exchange for monetary consideration is a commercial use, even if that activity is residential in nature." The Association demanded that all rental activities cease and all advertisements listing the property for rent be removed. But Gribi chose to rent her property despite the notice. Under

---

[5] The second property was sold in July 2012 and there is no evidence that it was rented after it was sold.

these facts, the trial court did not err by concluding that the Association has not waived enforcement of the deed restriction.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney